## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPHINE GUION,<br><br>     Plaintiffs,<br><br>vs.<br><br>**BONNER HOMELESS TRANSITIONS BOARD OF DIRECTORS** (formally T.I.P.S.); **MARY JO AMBROSAINI,** individually, and in her official capacity as THE BOARD OF DIRECTORS PRESIDENT OF THE BONNER HOMELESS TRANSITIONS AND THE BONNER COUNTY HOMELESS TASK FORCE; **JOANNE BARLOW,** individually and in her official capacity as the PROGRAM MANAGER FOR THE BONNER COUNTY HOMELESS TASK FORCE; **BONNIE EDGECOMB** and **MICHELLE LANG, FORMER T.I.P.S. PARTICIPANTS,**<br><br>     Defendants. | Case No. 2:18-cv-00186-DCN<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Plaintiff Josephine Guion's Motion for Summary Judgment (Dkt. 65) and Defendants Board of Directors of the Bonner Homeless Transitions, Mary Jo Ambrosiani, and Joanne Barlow's (collectively, "Bonner Defendants") Motion for Summary Judgment (Dkt. 66), Motion to Strike, and Motion for

Sanctions (Dkt. 70).[1] Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court finds good cause to DENY Guion's Motion for Summary Judgment, GRANT Bonner Defendants' Motion for Summary Judgment, GRANT in Part, DENY in PART Bonner Defendants' Motion to Strike, and DISMISS AS MOOT Bonner Defendants' Motion for Sanctions.

## II. BACKGROUND[2]

Bonner Homeless Transitions, d/b/a Transitions in Progress Services ("TIPS") provides transitional housing and program management to homeless families and victims of domestic violence. Its goal is to help individuals and families who are homeless, in danger of becoming homeless, or who lack adequate housing reach self-sufficiency and independent living in a safe and supportive environment.

_____

[1] Bonner Defendants filed their Motion to Strike and Motion for Sanctions as attachments to their response brief to Guion's Motion for Summary Judgment. Dkt. 70-10. Defendants Edgecomb and Lang have not moved for summary judgment, nor have they joined Defendants' motion. Indeed, according to the Court's docket it appears that neither have been served at this point; it appears the U.S. Marshal Service was unable to execute service to Edgecomb and Lang based on the address Guion provided. *See* Dkt. 64 at 3-4 (handwritten note by U.S. Marshal Service that Edgecomb and Lang's "whereabouts [are] unknown"). Regardless, the Court does not make any ruling on Edgecomb and Lang's status in the case in this Order, but will cross that bridge when it becomes necessary.

[2] The facts in this section are taken from both parties' motions for summary judgment, and, unless otherwise noted, are undisputed.

TIPS runs a facility in Hope, Idaho, known as the Trestle Creek Facility. This facility includes a residence with four units for single women, known as the Holland House. Women in the Holland House each have their own bedroom and bathroom, but share a common area, common kitchen, and laundry area. On July 8, 2013, Guion became a resident at the Holland House. Per TIPS conditions, Guion's stay at the Holland House was limited to two years and would thus end on July 8, 2015.

During her first few months at Holland House, Guion alleges two case managers, Gina Graham and Joanne Barlow,[3] each made separate remarks to her regarding her race. Guion alleges that Graham asked her why she was living in North Idaho given the racial problems in the area and asked if she would be more comfortable in Spokane because there was a higher African American population there. Guion further alleges that Barlow stated:

> Why are you, an African American, doing in here? Don't you feel oppressed by how people (white) treat you? Don't you feel oppressed living here? I'm from the 'South' and I know how African Americans feel being oppressed about living in places like this, where there are not large African American populations.

Dkt. 65, at 4. Bonner Defendants dispute this, stating that Barlow never said this to Guion. Additionally, Bonner Defendants assert they did not receive any notification that Graham had said anything to Guion regarding Guion's race.

In January 2014, Guion sustained a workplace injury and began to receive workers' compensation. It was ultimately determined that she had a permanent disability and Guion

---

[3] Graham was the TIPS interim case manager during October 2013. Barlow succeeded Graham as the TIPS program manager at Holland House around November 2013.

received Social Security Disability ("SSD") payments. During the times that Guion was on SSD and had no other employment, Barlow explained to Guion that SSD payments did not count as income and that Guion's program fees would be waived.

Guion's stay at Holland House was rocky, to say the least. Guion made numerous complaints to Graham, Barlow, and TIPS Board of Directors President Ambrosiani about the other residents, and the other residents made numerous complaints about her. Guion submitted her first written complaint on September 30, 2013, against another resident who had used the communal laundry room during Guion's designated laundry time. Over the next few months, Guion complained multiple times that other residents were encroaching on, or leaving messes on, her communal counter space. Bonner Defendants addressed each of these concerns by switching around the laundry schedule to Guion's liking and reminding both Guion and other residents to be mindful of others' spaces and encouraging them to treat each other with respect.

The majority of Guion's complaints concerned Defendants Bonnie Edgecomb and Michelle Lang.[4] In April 2014, Edgecomb and Lang made racial remarks about Guion's "rag" she wore to cover her "nappy" hair and referred to the music Guion listened to as "black shit." *Id.* at 5. Some days later, Guion became upset with the way Edgecomb was storing food in the refrigerator and began moving Edgecomb's food items without Edgecomb's permission. A verbal altercation between Guion and Edgecomb ensued, and

---

[4] As previously noted, Edgecomb and Lang have not yet been served and therefore the Court makes no ruling on their status of the case in this Order.

Guion complained to Barlow. Barlow suggested the parties have a sit down with Barlow present to talk through the issue, which Guion refused. Ultimately, it was agreed that Edgecomb would share refrigerator space with Lang and Guion would share it with the other resident.

Guion continued to make complaints against Edgecomb and Lang throughout her stay at Holland House regarding their racial comments toward or about her,[5] though Guion did not make a complaint for every occurrence. Guion also made complaints that the two would stare at her, that Lang would leave drops of dish soap on Guion's counterspace, and that Edgecomb would stand in front of the fridge—though Guion doesn't state that Edgecomb did so to prevent Guion or anyone else from accessing its contents. Whenever Guion made a complaint to Barlow, Barlow attempted to sit down with Guion and the other resident to solve the problem, but Guion always refused. As Guion did not make herself available to help remedy any complaints or grievances—even though she filed many herself—Barlow ended up advising the other residents that, should they have a disagreement with Guion, to do their best to avoid her.

In June 2014, Barlow spoke with Guion about one of Guion's pending grievances in which Guion asked TIPS to remove Edgecomb from Holland House. Barlow told Guion that TIPS had to consider Guion's pending grievance concurrently with the numerous complaints made against Guion. Barlow further explained that many of the staff (including

---

[5] Edgecomb and Lang would allegedly say things like "go back to where you came from," or call the music Guion listened to "jungle music" and would make monkey sounds. Dkt. 65, at 6–8.

herself) and residents had felt harassed or threatened by Guion and that there was the possibility that Guion could be removed from Holland House.

After the meeting, Guion continued to experience problems with Edgecomb and Lang. On November 15, 2014, Lang attempted to use the sink in the communal kitchen while Guion was using it. Guion pulled the faucet out of Lang's hands and pushed Lang's hand away. Following this incident, Barlow scheduled a meeting for November 24, 2014, between herself, Guion, and Lang to work through the issues between the two residents. Guion refused to attend the meeting, and instead went to the Bonner County Sheriff's Office (the "Sheriff's Office") to report the incident. The Sheriff's Office advised Guion to avoid Lang and to not have physical contact with her.

On November 26, 2014, the Sheriff's Office went to the Holland House in response to a 9-1-1 call from Guion. Edgecomb had been cutting the netting off of a turkey in the communal sink while Guion was washing dishes next to her. Edgecomb attempted to use the faucet, and Guion prevented her from doing so. Guion then alleges that Edgecomb pointed at the knife she was using to cut the turkey while looking at Guion. During the investigation, Guion told Deputy Matthew Wallace that no threats were made with the knife. Wallace advised both Guion and Edgecomb to separate and not have contact with each other.

On December 3, 2014, Guion filed a grievance, alleging for the first time that Barlow was racially discriminating against her. Ambrosiani decided that she, Guion, and Barlow would all have a meeting to discuss Guion's concerns. Like every other meeting in which Guion was asked to attend to discuss her concerns, Guion refused to attend, stating

that she wanted her attorney present.[6] Ambrosiani stated they could reschedule the meeting to a date of Guion's choosing, but Guion never rescheduled the meeting.

On December 20, 2014, and January 5, 2015, Guion filed a complaint with the U.S. Department of Housing and Urban Development ("HUD") and the Idaho Human Rights Commission ("IHRC"), respectively, based on the alleged racial discrimination from Barlow, Edgecomb, and Lang. Ultimately, HUD declined to investigate Guion's complaint because Guion failed to comply with HUD's requests for information. IHRC, on the other hand, did investigate Guion's complaint, but found no merit to the allegations that the Defendants discriminated against Guion.

As Guion's time at Holland House was near its end, on April 28, 2015, Barlow placed a note under Guion's door with photocopies of a housing rental. The housing rental was for a one bedroom, 160 square foot off-the-grid cabin for $50 a month. Guion did not pursue the rental property. On July 8, 2015, Guion left the Holland House.

Guion filed her Complaint on May 22, 2018, followed by an Amended Complaint on July 22, 2019. Guion alleges five causes of action: (1) Race and Hostile Housing Environment; (2) Defamation; (3) Intentional Infliction of Emotional Distress; (4) Retaliation; and (5) Fraud.[7] Bonner Defendants and Guion each filed a motion for summary judgment on November 5, 2019. The motions are now fully briefed and ripe for decision.

---

[6] Nowhere does Guion state, nor does the record show, that she actually had an attorney at this time.

[7] Guion alleges four separate counts of fraud: (1) Intentional False Statements in Documents; (2) Falsified Documents; (3) Forgery; and (4) Concealment with Knowledge. The Court, for purposes of analysis, consolidates these into a single count of fraud.

## III. LEGAL STANDARD

Pending before the Court are two cross-motions for summary judgment. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

When cross-motions for summary judgment are filed, a court must "rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Tulalip Tribes of*

*Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (internal quotation marks and citations omitted). In doing so, it must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment—where all parties essentially assert that there are no material factual disputes—does not end a court's responsibility to determine whether disputes as to material fact are present. *Id.*

## IV. DISCUSSION

### A. Bonner Defendants' Motion to Strike

As a preliminary matter, the Court will address Bonner Defendants' Motion to Strike. Bonner Defendants' argue that because none of the attachments to Guion's Motion for Summary Judgment have been authenticated by way of an affidavit or declaration, the Court should strike all the attachments in their entirety—246 pages worth—and refrain from considering them.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Authentication is a condition precedent to admissibility, and this condition is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). An affidavit or declaration is not needed to authenticate a document; there are multiple ways to show that an "item is what the proponent claims it is." *See id.; Anand v. BP W. Coast Prod. LLC,* 484 F.Supp.2d 1086,

1092 n.11 (C.D. Cal 2007) ("Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2017 WL 3149578, at *8 (S.D. Cal. July 24, 2017) (same).

The Court disagrees with Bonner Defendants that all Guion's attachments must be stricken because they are not accompanied by an affidavit or a declaration. An affidavit or a declaration is not required to authenticate a document. Indeed, an affidavit or declaration is not a "save all" argument for every document submitted, and in some instances may even prevent the admission of a document. In *Orr*, the court found that a document was inadmissible at summary judgment because it was attached to an affidavit, rather than submitted as a stand-alone exhibit, as the affiant did not have personal knowledge of the document. *Orr*, 285 F.3d at 777–78.

In other words, Guion was not required to attach an affidavit or declaration, but must present "evidence sufficient to support a finding that" a document is what she claims it is. Fed. R. Evid. 901(a). Here, many of Guion's documents are ones that Bonner Defendants also have submitted—with an accompanying affidavit claiming they have personal knowledge of them—and are thus admissible. *Orr*, 285 F.3d at 776 ("We now hold that when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.") Further, other documents Guion submitted have been produced in discovery and are thus admissible. *Anand*, 484 F.Supp.2d at 1092 n.11 ("Documents produced in response to discovery

requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent.").

There are, however, documents Guion submitted that are not admissible. As Guion's exhibits are rather disorganized, the Court will not attempt to explain its analysis on each of the 246 pages Guion has attached as exhibits to her motion. It is sufficient to state that the Court will neither consider *all* of Guion's exhibits, nor will it blanketly strike them. Rather, the Court will consider only the documents that meet the appropriate standards set by the Federal Rules of Evidence and Federal Rule of Civil Procedure 56 and will give those documents the weight it deems appropriate. The Court will not consider inadmissible documents in its decision today.

## B. Bonner Defendants' Motion for Summary Judgment[8]

### 1. *Race and Hostile Housing Environment*

Though it appears Guion relies on the Fair Housing Act ("FHA") in all her claims, her first claim is specifically for Bonner Defendants' violation of the FHA.[9] The FHA

---

[8] As will be discussed, the Court relies on the statute of limitations in ruling on these motions. Though Bonner Defendants do not raise the statute of limitations argument in their briefing, the Court may still rule on a statute of limitations issue, so long as the defendant has not waived the defense. *Levald, Inc.*, *v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (holding the district court "properly entertained the statute of limitations issue" when the issue was not argued in the briefing but was "pleaded . . . in its answer, and thus preserved . . ."). Here, Bonner Defendants have argued the statute of limitations as an affirmative defense in both their Answer to the Complaint and Answer to the Amended Complaint. Dkt. 8, at 7; Dkt. 50, at 12.

[9] In every cause of action, Guion includes a laundry list of several statutes, many of which are not applicable. However, "[a] document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and thus the Court will accordingly construe each of Guion's causes of action in a manner that will make them legally sustainable, regardless of whether or not the statutes relied on are applicable.

makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604. A plaintiff bringing an FHA claim must do so "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain relief with respect to such discriminatory housing practice or breach." *Id.* at § 3613(a)(1)(A). "This computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." *Id.* at § 3613(a)(1)(B).

Here, in order to calculate the date the statute of limitations has run, the Court must take into account Guion's HUD complaint, which she claims to have filed on December 20, 2014. *See id.*[10] A review of the record shows that, while Guion did file a complaint with HUD, there was no investigation into her claims. After the HUD conducted a phone interview with Guion, HUD sent Guion a letter on January 29, 2015, informing her that it "need[ed] more information to clearly establish possible violation of [the FHA] and to determine whether or not an investigation can proceed." Dkt. 75-1, at 15. The letter then stated "[i]n order to timely process your complaint, we will need the attached information within **thirteen (13) business** days of this letter," otherwise "no further action will be taken

---

[10] Although Guion also filed a complaint with IHRC, this complaint does not qualify as an "administrative proceeding under [the FHA's] subchapter." *See* 42 U.S.C. § 3613(a)(1)(B). As such, the Court considers only the HUD complaint for Guion's FHA claim.

regarding this inquiry." *Id.* (emphasis in original).

Guion did not submit the attached information at any point. HUD then sent an identical letter to Guion on July 11, 2015, presumably giving Guion another chance to submit the required information. Dkt. 75-1, at 16. Despite HUD's efforts, Guion again failed to submit the attached information. Based on the language in the two letters, then, there was no administrative action regarding Guion's HUD complaint because it did not commence an investigation but took no further action. Thus, there is no excluded time extending the two-year statute of limitations on Guion's FHA claim.[11]

The latest date that the occurrence or termination of the alleged discriminatory housing practice could have taken place was on July 8, 2015—when Guion left Holland House—as she does not allege any other acts of discrimination after that date. Guion filed her Complaint on May 22, 2018, more than two years after that date. Clearly, then, Guion is barred from bringing a claim under the FHA.

Even if the Court excluded the time from when Guion filed her HUD complaint to when the HUD declined to take further action pursuant to the second letter it sent to Guion, the statute of limitations still bars Guion's Complaint. The second letter, dated July 11, 2015, stated that Guion had thirteen business days to submit the required information.

---

[11] Courts have recognized that this two-year statute of limitations may also be extended under the doctrine of equitable tolling, when "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (internal quotations omitted). In other words, "the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Id.* (internal quotations omitted). Guion has not argued for equitable tolling, but even if she had, the doctrine is inapplicable under the facts of this case.

Thirteen business days from July 11, 2015 is July 29, 2015.[12] As HUD did not receive any of the required information by July 29, 2015, it "took no further action" on her case. *See* Dkt. 75-1, at 16. The number of days between December 20, 2014—when Guion filed her HUD complaint—and July 30, 2015—when HUD declined to investigate—is 222. If these 222 days were excluded as an administrative proceeding under the FHA, Guion would have been required to file her Complaint on or before February 15, 2018, which she failed to do.

In addition to this procedural bar, Guion's FHA claim is substantively barred as well because no reasonable juror would conclude that any of Bonner Defendants' actions were discriminatory. In the hundreds of documents and allegations from this case that are before the Court, the evidence shows only one instance where any Bonner Defendant even mentions Guion's race. On November 18, 2013, in a meeting between Barlow and Guion, Barlow noted that Guion's file included a note about a discrimination suit Guion had filed against a prior employer. Dkt. 65-12, at 1. Barlow asked Guion if she felt that race, gender, or age would be a barrier to future employment. Barlow also mentioned that she had a relative who had experienced racial discrimination in the area and felt that she could help Guion overcome any discriminatory barriers, real or perceived. *Id.* Guion became upset and refused to discuss the subject further. *Id.* That a house manager recognized a separate lawsuit for racial discrimination and sought to aid a resident with any discrimination that resident might be experiencing is applaudable and should be encouraged; it strains reason

---

[12] A court may take judicial notice of facts "that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes calendars. *Wayne v. Leal*, 2009 WL 2406299, at *4 (S.D. Cal. Aug. 4, 2009).

to interpret this as discriminatory.

Even if Barlow and Graham made the comments Guion alleges they did, it would not be enough to show discrimination. Guion, with no evidence for support, alleges that both Graham and Barlow inquired whether she experienced discrimination and if she would be happier in a place with less discrimination. Mentioning someone's race and recognizing that racism and discrimination are unfortunately a part of our society does not itself constitute discrimination. *See Racial Discrimination,* Black's Law Dictionary (11th ed. 2019) (defining racial discrimination as "[d]ifferential treatment; esp., a failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored"). Further, none of Bonner Defendants' actions throughout Guion's stay at Holland House show any differential treatment.

In sum, Guion's Complaint is time-barred—even taking into account the time period from when Guion filed her HUD complaint to when HUD dismissed the matter. Further, no reasonable juror would conclude that any of Bonner Defendants' actions were discriminatory. Thus, the Court grants Bonner Defendants' motion regarding Guion's FHA claim.

   *2. Defamation*

Guion's second cause of action is for defamation. "In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007). "A defamatory statement is one that 'tend[s] to harm a person's reputation, [usually]

by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.'" *Elliott v. Murdock*, 385 P.3d 459, 465 (Idaho 2016). Communication, often referred to as "publication" in legal context, occurs when defamatory mater is "communicat[ed] intentionally or by a negligent act to one other than the person defamed." *Irish v. Hall*, 416 P.3d 975, 980 (quoting Restatement (Second) of Torts § 577 (1977)). In Idaho, the statute of limitations for a defamation action is two years. Idaho Code § 5-219(5). This time limit "begins to run from the time of the commission of each wrongful act." *Curtis v. Firth*, 850 P.2d 749, 754 (Idaho 1993).

Here, Guion alleges that Defendants discredited and vilified her through false statements and documents. Guion alleges that Defendants made these falsities throughout her stay, such as telling other residents that she was mentally ill, but focuses primarily on the file of documents Defendants sent to IHRC in its review of the complaint Guion filed with it. Based on IHRC's investigation of Guion's January 5, 2015 complaint, IHRC received documents, such as incident reports, staff notes, and letters from other residents, from Defendants relating to Guion's stay at the Holland House. Dkt. 70-1, at 3. These documents, along with the statements contained therein, were all made before Guion left the Holland House on July 8, 2015.

After analyzing the allegedly defamatory statements made by Bonner Defendants, the Court concludes that the statute of limitations bars them and that, substantively speaking, the statements do not rise to the level of defamatory. All the documents and the statements contained therein that were submitted to IHRC were made between October

2013, and July 8, 2015. Even assuming that the statements were made on the latest possible date—July 8, 2015—the statute of limitations bars any allegedly defamatory statements.

Further, Guion cannot maintain a claim of defamation based on the reports that Bonner Defendants submitted to IHRC. "[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." Restatement of Torts (Second) § 583 (1977).[13] Because Guion complained of Bonner Defendants alleged discriminatory conduct and defaming statements, she implicitly consented to Bonner Defendants' publication of the statements to IHRC for its review. *See Oviedo v. Rudin Mgmt. Co.*, 140 A.D.2d 680, 681 (N.Y. App. Div. 1988) ("Where, as here, the plaintiff has instigated the publication of a statement he later alleges to be defamatory he may not be heard to complain and will be deemed to have consented to the publication.") (citing Restatement [Second] of Torts § 583 (1977)).

In addition, many—if not all—of the statements published by Bonner Defendants do not qualify as defamatory statements. These statements, such as Barlow's April 28, 2015 note, suggesting the 160 square foot cabin as a potential residence, did not impugn Guion nor did they harm her reputation. Using Barlow's April 28, 2015 note as an example, Guion argues that Barlow's suggestion was discriminatory and defamatory simply because the house was small and had no electricity. What Guion fails to recognize, though, is she had little to no income at the time, and her stay at the Holland House was quickly ending.

---

[13] Though Idaho has yet to address this issue directly, Idaho courts have relied on the Second Restatement of Torts numerous times in outlining claims, particularly ones regarding defamation. *See, e.g., Irish,* 416 P.3d at 980.

Barlow, as the house manager, stated that she was simply doing her job and that this house was one that fit Guion's very small budget. Other purportedly defamatory statements include Barlow stating that Guion did not have to pay program fees because she had no source of income other that Social Security Disability and Barlow inquiring into Guion's lawsuit against a former employer for defamation. Indeed, the vast majority of statements that Guion claims were defamatory were actually favorable to Guion. The Court finds that no reasonable juror could interpret these statements as rising to the level of defamation.

The one statement that might qualify as defamatory is Barlow's alleged statement that Guion is mentally ill and that the other residents should avoid her. Guion argues Barlow said this to many other residents but provides no evidence to support this assertion. Barlow disputes that she said this and maintains that she informed grieved residents to avoid Guion because Guion refused to participate in mutual, amiable discussions. Barlow's statement—if she said it—is admissible,[14] and in a light most favorable to Guion there is at least a question of fact concerning whether this statement is defamatory. However, as the Court has indicated, this statement—along with all the others—was made more than two years before Guion filed her Complaint and is thus time-barred.

In sum, the statute of limitations bars Guion's defamatory claims. In addition, a reasonable juror would not interpret any of Bonner Defendants' statements as defamatory. Thus, the Court grants Bonner Defendants' motion regarding Guion's defamation claim.

---

[14] Defendants argue that this statement is inadmissible as hearsay. Statements of a party opponent are not hearsay. Fed. R. Evid. 801(d).

*3. Intentional Infliction of Emotional Distress*

Guion alleges that Defendants "intentionally inflicted emotional distress upon [her]." Dkt. 47-1, at 6. To establish intentional infliction of emotional distress, a plaintiff must show that "(1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress, and (4) the emotional distress was severe." *Johnson v. McPhee*, 210 P.3d 563, 572 (Idaho 2009). Further, a defendant's "conduct must be not merely unjustifiable; it must rise to the level of atrocious and beyond all possible bounds of decency, such that it would cause an average member of the community to believe that it was outrageous." *Id.* (internal quotations omitted). The statute of limitations for intentional infliction of emotional distress in Idaho is two years. Idaho Code § 5-219(4); *see also Ferro v. Soc'y of Saint Pius X*, 149 P.3d 813, 815 (Idaho 2006) (applying the two-year statute of limitations to a claim for intentional infliction of emotional distress).

Here, analysis of this claim is similar to the analysis of Guion's defamation claim; it is both barred by the statute of limitations and is insufficient under the elements of the offense.

First, this claim is barred by Idaho's two-year statute of limitations. Again, the latest possible date in this case that Defendants could have inflicted distress on Guion is July 8, 2015. Guion filed her Complaint on May 22, 2018, over two years later. Thus, the statute

of limitations clearly prevents Guion from bringing this claim.[15]

Second, no reasonable juror could find any of Bonner Defendants' actions as "atrocious" or "beyond all possible bounds of decency." *See Johnson*, 210 P.3d at 572. As was explained above, the vast majority of Bonner Defendants' actions were to aid and assist Guion. The remainder of Bonner Defendants' actions are insignificant. For example, Guion alleges that Barlow inflicted this emotional distress because she did not have the contact number for the "Housing Agency . . . posted on the bulletin board outside of her office in Holland House."[16] Dkt. 47-1, at 6. Guion has not cited to a single case—nor was the Court able to find one—to show that this behavior, along with the other actions Guion alleges, is sufficiently outrageous to impose liability on Bonner Defendants for intentional infliction of emotional distress. Thus, the Court will grant Bonner Defendants' motion regarding Guion's claim for intentional infliction of emotional distress.

### 4. Retaliation

Guion's fourth cause of action is for retaliation under the FHA. "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). As with all FHA claims, retaliation claims are subject to

---

[15] Further, under the facts of this case, the doctrine of equitable estoppel is inapplicable. "The only non-statutory bar to a statute of limitation defense in Idaho is the doctrine of equitable estoppel." *Ferro*, 149 P.3d at 815. Equitable estoppel is applicable when the party asserting estoppel did not or could not know the truth due to false representation or concealment. *Id.*

[16] The Court is unsure what "Housing Agency" Guion is referring to here, but it ultimately does not matter.

a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A).

As the applicability of the FHA's statute of limitations has already been thoroughly discussed above, the Court will not restate the analysis here. Suffice it to say that Guion's FHA retaliation claim is time-barred as her claim was not filed within the two-year time frame, even if the Court tolled the time for Guion's HUD complaint.

Moreover, as with the other claims, the facts do not give rise to a claim for retaliation. Throughout her entire stay, Bonner Defendants strove to accommodate Guion. The evidence shows that Guion was abrupt and rude to both residents and management throughout her stay at Holland House, yet Bonner Defendants went out of their way to accommodate Guion. All the evidence shows that Bonner Defendants more than adequately addressed each complaint or grievance Guion filed and that it was Guion who refused to participate in any proposed solutions. Additionally, the evidence shows that Defendants complied with IHRC's investigation by submitting evidence and responding to questions posed by IHRC. There are simply no facts to suggest that Bonner Defendants retaliated against Guion in any way. As such, the Court will grant Bonner Defendants' motion regarding Guion's claim for retaliation.

### 5. Fraud

Guion's final cause of action is for fraud. The elements for fraud are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Faw v. Greenwood*, 613 P.2d 1338, 1340 (Idaho 1980). The statute of limitations for a fraud claim is three years. Idaho Code § 5-218(4).

Here, Guion's claims fail to meet numerous elements for a fraud claim, foremost among them is the falsity of any representations. Guion takes issue with the statements Bonner Defendants submitted to IHRC as part of its investigation regarding the grievances and complaints she filed while at Holland House. However, Guion fails to show that any of Defendants' statements are false. In providing documents to IHRC, Bonner Defendants simply sent over Guion's case file. This file contained correspondence between Guion and staff, statements from other residents—such as Edgecomb and Lang—policies and procedures, and police reports. *See* Dkts. 70-3, 70-4. The contents of the file explain some of the events that Guion herself admits happened, such as the incident involving the clothes that another resident left in the communal laundry room, and do not contradict Guion's versions of the respective events. Though Guion's subjective feelings about the severity of the situations may differ from Bonner Defendants', this does not transform Bonner Defendants' statements into lies.

After reviewing each of the statements Guion claims were fraudulent, the Court finds no evidence to support such an assertion. Guion has not made a threshold showing of falsity or met any of the other necessary elements to support a claim for fraud. Thus, the Court grants Bonner Defendants' motion regarding Guion's fraud claim.

### 6. Summary

In a light most favorable to Guion, she has failed to establish the elements of each of her causes of action. To summarize the analysis above, it is clear to the Court that this

is a case of over-sensitivity and overreaction. Certainly, Guion was in a tough situation; living in a transitional home with injuries and limited income is less-than-ideal for anybody and the Court is sympathetic to Guion's plight. However, such tough situations do not turn everyday inconveniences or disagreements, such as having to share a communal sink or one small delay in washing your laundry, into actionable claims. The evidence overwhelmingly shows that Guion made mountains out of molehills and refused to participate in any collaborative efforts to address the problems she complained of. It is also clear that Defendants were patient with Guion, tried to balance her needs with the needs of the other residents, and did not take any discriminatory or fraudulent actions against her.

In addition, except for her fraud claim, the statute of limitations bars recovery on each of Guion's claims. Thus, the Court GRANTS Bonner Defendants' Motion for Summary Judgment in its entirety.

## C. Guion's Motion for Summary Judgment

The Court independently reviews the record but relies on the same legal reasoning in deciding Guion's Motion for Summary Judgment as it did in granting Bonner Defendants' Motion for Summary Judgment. As the Court granted summary judgment to Bonner Defendants while interpreting the facts in a light most favorable to Guion, it goes without saying that the Court cannot rule against Bonner Defendants construing the facts in a light most favorable to them. As such, Guion's Motion for Summary Judgment is DENIED.

## D. Defendants' Motion for Sanctions for Spoliation

Bonner Defendants allege that Guion destroyed her laptop computer and all the

information contained therein. Bonner Defendant's further allege that Guion knew the laptop computer would be material to this litigation and suggest that the Court grant and adverse inference or preclude any arguments from Guion that rely on the destroyed files. However, as the Court has ruled in favor of Bonner Defendants without any such sanction, this motion is DISMISSED AS MOOT.

## V. ORDER

**IT IS HEREBY ORDERED THAT**:

1. Guion's Motion for Summary Judgment (Dkt. 65) is DENIED.

2. Bonner Defendants' Motion for Summary Judgment (Dkt. 66) is GRANTED.

3. Bonner Defendants' Motion to Strike (Dkt. 70-10) is GRANTED in PART and DENIED in PART, as explained above.

4. Bonner Defendants' Motion for Sanctions (Dkt. 70-10) is DISMISSED AS MOOT.

DATED: April 2, 2020

David C. Nye
Chief U.S. District Court Judge